UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| HANNAH PRIDDY, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 22-CV-00474 |
| DR. NOAH'S ARK VETERINARY CLINIC, NOAH ARNOLD; ABC INSURANCE COMPANY, | ) |
|       Defendants, | ) |
| and | ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) |
|       Intervenor. | ) |

**PROPOSED FINDINGS OF FACT IN SUPPORT OF INTERVENOR STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR DECLARATORY AND SUMMARY JUDGMENT**

NOW COMES Intervenor State Farm Fire and Casualty Company ("State Farm"), by and through its counsel, Meissner Tierney Fisher & Nichols S.C., and submits the following Proposed Findings of Fact in support of State Farm's Motion for Declaratory and Summary Judgment:

1. Attached as Exhibit A to the Declaration of Steven L. Miracle ("Miracle Decl.") is a true and correct copy of Plaintiff's Complaint.

2. Plaintiff's Complaint contains three claims against Defendants Noah Arnold ("Arnold") and Dr. Noah's Ark Veterinary Clinic (individually, "Noah's Ark," and together with Arnold, "Defendants") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e-5(f)(1) and (3), which include Count I – Sex Discrimination and Sexual Harassment, Count II – Hostile Work Environment, and Count III – Retaliation. (Miracle Decl., Ex. A, Pl's Compl.)

3. Plaintiff alleges Defendants "engaged in unlawful employment discrimination against [her] on the basis of sex, and/or harassed and/or tolerated sexual harassment against her, and/or retaliated against her under Title VII." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 4.)

4. Plaintiff worked as a receptionist for Defendants beginning in February 2017. (Miracle Decl., Ex. A, Pl's Compl. at ¶ 4.)

5. Plaintiff alleges her employment with Defendants "was fraught with a constant series of inappropriate interactions and incidents that made her fear for her job and personal safety. Specifically, [Arnold] habitually engaged in conversations with Plaintiff that she found appalling and disgusting, including conversations concerning explicit and graphic descriptions of sexual intercourse, drug, use [sic], and marital affairs [Arnold] was involved in. [Arnold] also routinely forced Plaintiff into uncomfortable situations between him, his wife, and his several mistresses." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 15.)

6. Plaintiff alleges Arnold "continually asked [her] to cover-up about the affairs" he was having with Plaintiff's co-workers and "lie to his wife." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 17.)

7. Plaintiff alleges Arnold "detailed" an affair he was having with his friend's wife, including showing her and her co-workers "sexually explicit photographs of the friend's wife[.]" (Miracle Decl., Ex. A, Pl's Compl. at ¶ 18.)

8. Plaintiff alleges that, on "numerous occasions," Arnold asked her "very detailed questions about her sex life, including what things she had tried sexually and what things she wanted to try with her past boyfriends and/or fiancé." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 20.)

9. Plaintiff alleges that Arnold "constantly talked about inappropriate things to [her] and in front her co-workers," including watching his father "masturbating and watching pornographic movies" and describing a "special nighttime ritual" between him and his daughter. (Miracle Decl., Ex. A, Pl's Compl. at ¶ 21.)

10. Plaintiff alleges that Arnold "grabbed [her] face]" and kissed her as she was walking into the office one afternoon. (Miracle Decl., Ex. A, Pl's Compl. at ¶ 22.)

11. Plaintiff alleges she found Arnold in bed with technician whom he was having an affair with at an upstairs bedroom at the clinic. (Miracle Decl., Ex. A, Pl's Compl. at ¶ 23.)

12. Plaintiff alleges Arnold "hacked into" her phone and made "lewd comments about how [her] body looked in a swimsuit." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 24.)

13. Plaintiff alleges Arnold terminated her employment on March 29, 2021, citing "job abandonment" as the reason for her termination, which Plaintiff disputes. (Miracle Decl., Ex. A, Pl's Compl. at ¶ 28.)

14. Plaintiff alleges Arnold's conduct was "so incessant and pervasive that [she] had trouble sleeping and had to seek professional help to cope with the constant stress and anxiety. As a direct cause of [Arnold's] actions, Plaintiff suffered damages including but not limited to: emotional distress, physical harm, mental anguish, loss of reputation, loss of past wages, loss of future wages, loss of benefits, attorneys' fees, costs and other expenses as allowed by law." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 30.)

15. In support of Count I, Plaintiff alleges Defendants "unlawfully discriminated against [her] on the basis of her sex" by tolerating, failing to timely and adequately investigate, and failing to protect her from Arnold's sexual harassment. (Miracle Decl., Ex. A, Pl's Compl. at ¶ 32.)

16. In support of Count I, Plaintiff alleges Defendants violated Title VII in making decisions concerning her employment, including the decision to terminate Plaintiff, for reasons related to her sex "in reckless disregard of her federally-protected rights[.]" (Miracle Decl., Ex. A, Pl's Compl. at ¶ 33.)

17. In support of Count I, Plaintiff alleges Defendants' discrimination and/or sexual harassment was "intentional." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 34.)

18. In support of Count II, Plaintiff alleges Defendants violated Title VII by "engag[ing] in a pattern of unwelcome sexual advances and/or other verbal or physical conduct of a sexual nature that unreasonably interfered with Plaintiff's work performance and/or created an intimidating, hostile, or offensive work environment[.]" (Miracle Decl., Ex. A, Pl's Compl. at ¶ 36.)

19. In support of Count II, Plaintiff alleges Defendant' discrimination and/or sexual harassment was "intentional." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 37.)

20. In support of Count III, Plaintiff alleges Defendants "unlawfully and intentionally retaliated against [her] for participating in legally-protected activity in the workplace by allowing [Arnold] to intimidate and confront Plaintiff about her internal complaint of sexual harassment and about her conversations with coworkers revealing the discriminatory nature of the termination of her employment." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 39.)

21. In support of Count III, Plaintiff alleges Defendants' retaliation was "intentional." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 40.)

22. Plaintiff's Complaint also contains a claim for punitive damages. (Miracle Decl., Ex. A, Pl's Compl. at ¶¶ 41–44.)

23. Plaintiff's punitive damage claim is premised on allegations that Defendants "were reckless and malicious in discriminating, harassing, and retaliating against [her]; tolerating the discrimination, harassment, and retaliation . . .; and/or ignoring Plaintiff's attempts to enact remedial measures that would have protected employees from harassment." (Miracle Decl., Ex. A, Pl's Compl. at ¶ 44.)

24. At all times material, State Farm insured Arnold (but not Noah's Ark). (Miracle Decl., Ex. B, Homeowner's Policy, Ex. C, Personal Liability Umbrella Policy ("PLUP").

25. A true and correct copy of the Homeowner's Policy is attached as Exhibit B to the Declaration of Steven L. Miracle.

26. A true and correct copy of the PLUP is attached as Exhibit C to the Declaration of Steven L. Miracle.

27. The Homeowner's Policy contains the following insuring agreement under SECTION II – LIABILITY COVERAGES:

> **COVERAGE L – PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:
>
> 1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and
>
> 2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount we pay for damages, to effect settlement, or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any insured for criminal prosecution or proceedings.

(Miracle Decl., Ex. B, Homeowner's Policy at p. 23 of Form HW-2149.)

28. The Homeowner's Policy defines "occurrence" as "an accident, including accidental exposure to conditions" that results in either bodily injury or property damage during the policy period." (Miracle Decl., Ex. B, Homeowner's Policy at p. 4 of Form HW-2149.)

5

Case 2:22-cv-00474-SCD   Filed 03/10/23   Page 5 of 9   Document 38

29. The Homeowner's Policy contains the following exclusions:

**SECTION II - EXCLUSIONS**

1. Coverage L . . . do[es] not apply to:

    a. ***bodily injury*** or ***property damage*** that:

      (1) was a result of a:
          (a) willful and malicious; or
          (b) criminal;
          act or omission of the ***insured***;

      (2) was intended by the ***insured***; or

      (3) would have been expected by the insured based on a reasonable person standard.

      \*   \*   \*

      Exclusions a.(1), a.(2), and a.(3) above apply to all ***bodily injury*** or ***property damage*** even if the:

      (1) ***bodily injury*** or ***property damage*** was sustained by a different person, entity, or property than was expected or intended;

      (2) ***bodily injury*** or ***property damage*** was of a different kind, quality, or degree than was expected or intended;

      (3) ***insured*** lacked the mental capacity to control his or her conduct;

      (4) ***insured*** was not charged with or convicted of a criminal act or omission; or

      (5) ***insured*** was impaired by drugs or alcohol.

    n. ***bodily injury*** or ***property damage*** arising out of any actual, alleged, or threatened:

      (1) sexual harassment, sexual molestation, or sexual misconduct;

      (2) physical or mental abuse; or

      (3) corporal punishment;

      by the ***insured***.

(Miracle Decl., Ex. B, Homeowner's Policy at p. 25, 27 of Form HW-2149.)

30. The Homeowner's Policy also excludes coverage for bodily injury or property damage "arising out of the *business* pursuits of any *insured*." (Miracle Decl., Ex. B, Homeowner's Policy at p. X.)

31. The Homeowner's Policy defines "business" to mean any "full-time or part-time activity, trade, profession, employment, or occupation of a commercial, mercantile, or industrial undertaking of an economic nature." (Miracle Decl., Ex. B, Homeowner's Policy at p. 25 of Form HW-2149.)

32. The PLUP contains the following insuring agreement:

### COVERAGES

**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or suit is brought against an **insured** for damages because of a *loss* for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**. The most **we** will pay for such *loss* is the Coverage L limit of liability, as shown in the declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.

**Defense**

If a suit is brought against any *insured* for damages because of a *loss* to which this policy applies, **we** will provide a defense to the **insured** at **our** expense by counsel of *our* choice when the basis for suit is a *loss* that is not covered by any other insurance policy but is covered by this policy.

(Miracle Decl., Ex. C, PLUP at p. 6.)

33. The PLUP defines "loss" as "an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period." (Miracle Decl., Ex. C, PLUP at p. 2.)

34. The PLUP contains the following exclusions:

### EXCLUSIONS

There is no coverage under this policy for any:

3. **loss** arising out of alleged or actual:

7

a. sexual harassment;

   b. sexual molestation; or

   c. discrimination prohibited by law;

   by the **insured**.

*   *   *

6. **loss** arising out of any **insured's business property** or **business** pursuits of any insured, unless:

   a. (1) the loss does not involve any land motor vehicle or watercraft; and

   (2) required underlying insurance applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page[.]

*   *   *

14. **bodily injury** or **property damage** which is:

   a. either expected or intended by the **insured**; or

   b. the result of any willful and malicious act of the **insured**.

(Miracle Decl., Ex. C, PLUP at p. 7, 9.)

35. The PLUP defines "business" to mean "a trade, profession or occupation, including farming." (Miracle Decl., Ex. C, PLUP at p. 2.)

Dated this 10th day of March 2023.

        **MEISSNER TIERNEY FISHER & NICHOLS S.C.**

        By: *Electronically signed by Mark D. Malloy*
          Mark D. Malloy
          State Bar No: 1035066
          mdm@mtfn.com
          Steven L. Miracle
          State Bar No. 1089912
          slm@mtfn.com
          ***Attorneys for Intervenor State Farm Fire and Casualty Company***

**Mailing Address**
111 East Kilbourn Avenue, 19th Floor
Milwaukee, WI 53202-6622
Phone: (414) 273-1300
Facsimile: (414) 273-5840